FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2023

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATIE B.,[1] <br>      Plaintiff, <br><br>   vs. <br><br> KILOLO KIJAKAZI, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>      Defendant. | No. 2:21-cv-00155-LRS <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 18, 19 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 19. This matter was submitted for consideration without oral argument.

_____

[1] Plaintiff's last initial is used to protect Plaintiff's privacy. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

ORDER - 1

Plaintiff is represented by Chad Hatfield.  Defendant is represented by Special

Assistant United States Attorney Edmund Darcher.  The Court, having reviewed

the administrative record and the parties' briefing, is fully informed.  For the

reasons discussed below, the Court denies Plaintiff's motion, ECF No. 18, and

grants Defendant's motion, ECF No. 19.

## JURISDICTION

Plaintiff filed for disability insurance benefits and supplemental security

income benefits on December 6, 2018, alleging an onset date of December 31,

2005 (age 25) in both applications.  Tr. 248-70.  Benefits were denied initially and

upon reconsideration.  Tr. 78-134.  Plaintiff participated in a telephonic hearing

before an administrative law judge (ALJ) on September 22, 2020.  Tr. 36-77.  On

October 21, 2020, the ALJ issued an unfavorable decision.  Tr. 12-35.  The

Appeals Council denied review.  Tr. 1-6.  Plaintiff filed this action for judicial

review on May 5, 2021.  ECF No. 1.  This matter is before the Court pursuant to 42

U.S.C. §§ 405(g), 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner,

and are therefore only summarized here.

ORDER - 2

Plaintiff was born in 1980 and 38 years old when she filed her application. Tr. 27, 78. She graduated from Evergreen College with degrees in visual arts and creative writing. Tr. 449. She has limited work experience as an assistant teacher leading adults with special needs in activities and home-health caregiving. Tr. 26, 68-69. Plaintiff claims she is unable to work due to PTSD, fibromyalgia, rheumatoid arthritis, carpal tunnel, insomnia, Attention Deficit Disorder (ADD), anxiety, nerve pain, concentration issues and problems with her back, joints, shoulders, hands, and feet. Tr. 256. Plaintiff testified that her mind races, and she struggles to remember the most important things and accomplish tasks in a timely fashion. Tr. 54-55, 62-63. She testified that due to her fibromyalgia she is bedridden for a day every three days due to pain and fatigue. Tr. 65. She also testified that her hands go numb after five minutes of doing anything with them. Tr. 66-67.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

ORDER - 3

(quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner

ORDER - 6

must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 7

# ALJ'S FINDINGS

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2012. Tr. 17. At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date. Tr. 17. At step two, the ALJ denied Plaintiff's Title II claim for failure to establish a medically determinable impairment prior to the date last insured, as there were no medical records dated prior to 2015 and no medical source opined that her impairments dated back prior to 2012. Tr. 18. The ALJ determined the relevant period for the SSI claim began at the protective filing date of December 6, 2018. Tr. 18. The ALJ also found that Plaintiff has the following severe impairments since December 6, 2018: fibromyalgia versus mild osteoarthritis, asthma, scoliosis, posttraumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, and polysubstance abuse disorder. Tr. 18. The ALJ determined Plaintiff has the following non-severe medically determinable impairment: mild right carpal tunnel syndrome. Tr. 19. Though the record contains references to ADHD and bipolar disorder, the ALJ determined they were non-medically determinable impairments. Tr. 19.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] should avoid concentrated exposure to extreme temperature, vibration, and respiratory irritants. She could understand, remember, and carryout simple routine tasks and could maintain concentration, persistence, and pace on simple routine tasks for the two hour intervals usually required between regularly scheduled breaks. She could adapt to simple work related changes and could have occasional interaction with the public.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as hand packager, laundry worker, and assembler of electrical accessories. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 31, 2005, through the date of the decision. Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. However, Plaintiff does not

ORDER - 9

challenge the ALJ's reasoning for denial of the Title II claim. [3]   Regarding the Title XVI claim, Plaintiff raises the following issues for review:

> 1. Whether the ALJ conducted a proper step two analysis;
>
> 2. Whether the ALJ properly evaluated the medical opinion evidence;
>
> 3. Whether the ALJ conducted a proper step three analysis;
>
> 4. Whether the ALJ properly evaluated Plaintiff's symptom claims; and
>
> 5. Whether the ALJ conducted a proper step five analysis.

ECF No. 18 at 8-9.

---

[3] The ALJ denied the Title II claim for failure to establish a medically determinable impairment prior to the date last insured of December 31, 2012 as the earliest medical evidence was dated July 1, 2015.  Tr. 18.  Plaintiff's briefing does not address this finding and thus Plaintiff has waived argument as to the denial of Title II benefits.  *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review ... issues which are argued specifically and distinctly in a party's opening brief.").

ORDER - 10

**DISCUSSION**

**A. Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that the ALJ failed to account for her ADHD, memory loss, bipolar disorder and right carpal tunnel syndrome.  ECF No. 18 at 12.

At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first establish the existence of a medically determinable physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found non-severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ."  Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing,

ORDER - 11

hearing, and speaking; understanding, carrying out and remembering simple

instructions; responding appropriately to supervision, coworkers and usual work

situations; and dealing with changes in a routine work setting. 20 C.F.R. §§

404.1522, 416.922; *see also* SSR 85-28.

When considering the severity of mental impairments, the ALJ considers the

"degree of functional limitation resulting from [the claimant's] impairments" in

four broad areas of functioning: activities of daily living; social functioning;

concentration, persistence or pace; and episodes of decompensation. 20 C.F.R.

Part 404, Subpt. P, App. 1, at 12.00(C). Functional limitation is measured as

"none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4),

416.920a(c)(4). If limitation is found to be "none" or "mild," the impairment is

generally considered to not be severe. 20 C.F.R. § 404.1520a(d)(1),

416.920a(d)(1).

Step two is "a de minimis screening device to dispose of groundless claims."

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "Thus,

applying our normal standard of review to the requirements of step two, [the

Court] must determine whether the ALJ had substantial evidence to find that the

medical evidence clearly established that [Plaintiff] did not have a medically

severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d

683, 687 (9th Cir. 2005).

ORDER - 12

Importantly, if the ALJ finds the claimant has a medically determinable impairment that significantly limits the claimant's ability to do basic work activities, the ALJ proceeds to the following steps where the ALJ must consider all of the claimant's limitations, regardless of the label. Accordingly, the failure to identify additional impairments at this step is, by definition, harmless. In such circumstances, the claimant must demonstrate that the ALJ committed some harmful error in assessing the limitations going forward (e.g., the assigned RFC), which can be related to observations made at step two.

The ALJ found ADHD and bipolar disorder were not medically determinable, and therefore could not be severe impairments. Tr. 19. The ALJ noted that the record contained no testing to establish ADHD and the testing that was performed did not suggest ADHD. Tr. 19, 454. The ALJ further noted that multiple providers concluded that Plaintiff's ADHD-related complaints were more consistent with impaired sleep. Tr. 19, 512. Finally, the ALJ noted that Dr. Winfrey had testified that the record did not substantiate the diagnosis. Tr. 19. Plaintiff cites one record from the relevant period wherein ADHD was documented and noted as "controlled with Adderall." Tr. 508. Thus even if the impairment had been deemed medically determinable, Plaintiff has not demonstrated a valid basis for finding the impairment severe. *See Bagdasaryan v. Saul*, 787 F. App'x

423, 424 (9th Cir. 2019) (upholding finding impairments were non-severe when "well-controlled with medication and did not required specialist care").

As to bipolar disorder, the ALJ found that the record did not substantiate the diagnosis with little support of manic symptoms, and symptoms confounded by sleep problems and drug abuse.  Tr. 19.  Dr. Winfrey testified that Plaintiff herself had denied mania, undermining the credibility of the diagnosis.  Tr. 54.  Plaintiff did not address the ALJ's reasoning.  ECF No. 18 at 12; ECF No. 23 at 4-5.  Here, Plaintiff has not established that the ALJ erred in concluding that Plaintiff's mental health impairments were more appropriately characterized as depressive disorder rather than bipolar disorder.

Plaintiff claims the ALJ also "rejected . . . memory loss . . . as non-severe." ECF No. 23 at 4.  However, this misstates the record.  The ALJ did not even address memory loss at step two.  A finding was not required where memory loss appeared as a symptom, not an independent diagnosis that can establish the existence of a medically determinable impairment.  *See* Soc. Sec. Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, *3 (Mar. 16, 2016) ("SSR 16–3p") ] (a claimant must submit "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms.").

ORDER - 14

1    The only impairment determined non-severe by the ALJ was mild right

2    carpal tunnel syndrome. Tr. 18. The ALJ concluded that the impairment did not

3    result in more than minimal limitation for 12 consecutive months. Tr. 18. The

4    ALJ noted the medical evidence contained no evidence of motor weakness. Tr. 18.

5    This finding is consistent with the records cited by Plaintiff, including the January

6    4, 2018 progress note evidencing a diagnosis of carpal tunnel syndrome of the right

7    wrist which states there is [n]o motor weakness and presence of hand pain all

8    indicate the compression of her median nerve is not severe." Tr. 590. The ALJ did

9    not err in concluding that Plaintiff's carpal tunnel syndrome is non-severe.

10    Moreover, as Plaintiff was found to have severe physical and mental health

11    impairments, Plaintiff's claim was not resolved at step two. If there was any error

12    in the ALJ's finding at step two, it is harmless as all impairments, both severe and

13    non-severe, were considered in the determination of Plaintiff's residual functional

14    capacity. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Stout v.*

15    *Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006) (error at step

16    two is harmless where the step is resolved in claimant's favor). Plaintiff makes no

17    showing that ADHD, bipolar disorder, or carpal tunnel syndrome create credited

18    limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10

19    (the party challenging the ALJ's decision bears the burden of showing harm).

20

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly weigh the opinions of Nancy Winfrey, Ph.D., and Jon Christensen, Ph.D. in performing the step two evaluation of Plaintiff's co-occurring mental impairments.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources. 20 C.F.R. §§ 404.1520c(a) 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with the other evidence in the file or an understanding of Social Security Administration program policies and evidentiary requirements). *Id*.

ORDER - 16

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

ORDER - 17

1      1.  *Nancy Winfrey, Ph.D.*

2      Dr. Winfrey testified as a psychological medical expert at the hearing before

3 the ALJ.  Tr. 40-54.  Dr. Winfrey opined that Plaintiff has mild to moderate

4 limitations in the "paragraph B" criteria; Plaintiff is able to understand, remember,

5 and carry out simple routine tasks; Plaintiff is able to maintain concentration,

6 persistence and pace in two-hour intervals; Plaintiff can have at least occasional

7 interaction with the public and no limitations on interactions with co-workers and

8 supervisors.  Tr. 44-45.  The ALJ found Dr. Winfrey's opinion "very persuasive."

9      Plaintiff claims that the ALJ failed to account for additional aspects of Dr.

10 Winfrey's testimony including: 1) acknowledgement of false positives on drug

11 screening; 2) medical evidence of tangential and disorganized presentation with

12 rapid speech and low working memory, recall, and recognition; and 3) that

13 Plaintiff "could have marked limitations in memory given her scores."  ECF No.

14 23 at 3.  Plaintiff's argument mischaracterizes the testimony.  Dr. Winfrey did not

15 testify that Plaintiff's positive methamphetamine screening could be medication

16 related.  Tr. 48-49.  Dr. Winfrey testified that the evidence did not reflect a

17 discussion with Plaintiff's doctor regarding the positive drug test for

18 methamphetamine.  Tr. 48-49.  Moreover, although Dr. Winfrey acknowledged the

19 evidence of rapid speech, this evidence did not impact the medical opinion

20 rendered.  Finally, Dr. Winfrey did not testify that Plaintiff could have marked

limitations given her neuropsychological assessment scores.  Dr. Winfrey testified that generally, scores two standard deviations below average could affect the assessment of the paragraph B criteria, however, in this case, she considered these scores and concluded Plaintiff did not have marked limitations because of Plaintiff's average IQ and other unremarkable mental status examinations.  Tr. 52-53.

Plaintiff has not established any error in consideration of Dr. Winfrey's opinion and does not address or challenge any of the reasons that support finding Dr. Winfrey's opinion persuasive.  *See* ECF No. 18 at 11; ECF No. 23 at 2-3. When a claim of error is not argued and explained, the argument is waived.  *Indep. Towers*, 350 F.3d at 929.

2.  *Jon E. Christensen, Ph.D.*

On July 1, 2015, Dr. Christensen performed a neuropsychological assessment of Plaintiff to rule out an attention disorder.  Tr. 449-455.  Dr. Christensen concluded the test results suggested "prominent anxiety, mood and interpersonal difficulties," though Plaintiff was "not straightforward or forthright during the intake and most of the evaluation sessions" and her "mental health disposition" was more "muddled" after testing than prior.  Tr. 454.  Dr. Christensen's report lists some raw test scores, as well as percentile rankings. While certain tests showed average or adequate functioning, including a Full Scale

IQ score of 94, other cognitive tests showed difficulties on cognitive flexibility, conceptualization, behavioral inhibition, working memory/maintaining directional set, planning efficiency, visual reproduction, word list recall, and recognition memory.  Tr. 450-454.

As Plaintiff concedes, the ALJ was not required to discuss the persuasiveness of Dr. Christensen's findings because he did not provide a "medical opinion" as defined by regulation.  *See* 20 C.F.R. § 404.1513(a)(2) *and* 20 C.F.R. §416.913(a)(2) (defining "medical opinion" as a statement from a medical source about what Plaintiff can still do despite her impairments and whether Plaintiff has one or more impairment-related limitations or restrictions based on several enumerated abilities).  Insofar as Dr. Christensen did not assess impairment-related limitations, his statements do not constitute medical opinions.

In any event, contrary to Plaintiff's contention that the ALJ "completely failed to address" the objective testing performed by Dr. Christensen, the ALJ expressly considered Dr. Christensen's findings even though they did not constitute medical opinions.  Tr. 26.  The ALJ noted that Dr. Christensen's tests showed full scale IQ of 94, adequate attention, but low working memory.  Tr. 26. As to these test results, the ALJ explained why the evidence was rejected.  First, it was based on a one-time evaluation conducted in 2015, over three years prior to the relevant period.  Second, the ALJ noted it was inconsistent with other testing

ORDER - 20

and normal memory findings in examinations since 2015 and inconsistent with the

longitudinal record of "largely unremarkable mental status examinations [sic]

findings during the Title XVI period."  Finally, the ALJ noted that Dr. Winfrey had

likewise questioned the results considering the remaining record.  Tr. 26.  The

Court concludes substantial evidence supports the ALJ's evaluation of Plaintiff's

mental impairments.  Accordingly, remand is not warranted with respect to the

evidence from Dr. Christensen.

**C. Step Three**

*1. Listing 14.09D*

Plaintiff argues that the ALJ committed harmful error by failing to analyze

whether Plaintiff's fibromyalgia, alone or in combination with her other

impairments, medically equaled Listing 14.09D.  *See* 20 C.F.R. Pt. 404, Subpart P,

App. 1, § 14.09(6)(d) ("Listing 14.09D").  Plaintiff argues that Social Security

Ruling (SSR) 12-2p imposes an obligation on the ALJ to articulate why a

claimant's medically determinable impairment of fibromyalgia in combination

with other impairments does or does not medically equal Listing 14.09D.

Although fibromyalgia is not a listed impairment, it is a condition that may

be disabling.  SSR 12-2p provides that at step three:

> we consider whether the person's impairment(s) meets or medically equals
> the criteria of any of the listings in the Listing of Impairments in appendix 1,
> subpart P of 20 CFR part 404 (appendix 1).  FM cannot meet a listing in
> appendix 1 because FM is not a listed impairment.  At step 3, therefore, we

ORDER - 21

determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012). This excerpt explains that because fibromyalgia is not a listed impairment, the ALJ at step three determines only whether fibromyalgia "medically equals" a listing.  SSR 12-2p does not, however, impose an obligation on the ALJ to articulate why a claimant's medically determinable impairment of fibromyalgia in combination with other impairments does or does not medically equal Listing 14.09D.  Instead, SSR 12-2p offers Listing 14.09D as an example of a possible equivalent.

Listing 14.09 is for inflammatory arthritis, which is defined generally, and then the Listing contains enumerated disorders for inflammatory arthritis under Listings 14.09A, 14.09B, 14.09C, or 14.09D.  Listing 14.09D, which Plaintiff contends she meets or equals, sets forth one set of criteria for inflammatory arthritis at the listing level:

1. Repeated episodes of inflammatory arthritis

2. With at least two constitutional symptoms or signs: severe fatigue, fever, malaise, or involuntary weight loss; and

3. One of the following, at the marked level, due to symptoms caused by the inflammatory arthritis:

(A) Limitation of activities of daily living,

ORDER - 22

(B) Limitation in maintaining social functioning, or
(C) Limitation in completing tasks in a timely manner due to
deficiencies in concentration, persistence, and pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 14.00I, 14.09D.

Here, the ALJ's decision states the ALJ considered "Listing 14.09 (Inflammatory Arthritis)."  While it would have been preferable for the ALJ to explicitly discuss the criteria of 14.09D in the paragraph addressing Listing 14.09 at step three, the ALJ's failure to explicitly refer to Listing 14.09D does not require automatic reversal, where, as here, the ALJ's consideration of the Listing is apparent.  *See* Tr. 19-23.  In discussing fibromyalgia elsewhere in the decision, the ALJ noted that the lack of, or only mild to moderate, tenderness findings on exam did not support a finding the condition was disabling.  Tr. 23.  The ALJ found no marked limitations in the specified areas of functioning due to fibromyalgia.  Tr. 20-21.  This distinguishes this case from those cited in Plaintiff's Reply, ECF No. 23 at 6, which involved the failure to discuss fibromyalgia or reference an equivalent Listing for fibromyalgia at all.

Regardless, even if the ALJ did err at step three, Plaintiff has not shown that error was harmful.  Plaintiff concedes the record shows no involuntary weight loss or fever, but argues that Plaintiff suffered from repeated manifestations of fibromyalgia with severe fatigue and malaise.  The regulations provide definitions of these terms.  "Severe fatigue means a frequent sense of exhaustion that results in

ORDER - 23

significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(C)(2). "Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id*. Under the regulations, the term "repeated" means "the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(I)(3). The claimant "must have the required number of manifestations with the frequency and duration required [and] the manifestations must occur *within the period covered*." *Id* (emphasis added).

The specific evidence Plaintiff cites does not show that Plaintiff experienced repeated manifestations of fibromyalgia with "severe fatigue" and malaise within the relevant period.[4] Independent review of the relevant record reveals evidence of

---

[4] For purposes of Title XVI, the relevant time period begins December 6, 2018, the protective filing date of Plaintiff's application, and ends with the date of the ALJ's decision, October 21, 2020. Tr. 18. The medical evidence cited by Plaintiff on

ORDER - 24

1   chronic fatigue, but not other constitutional symptoms.  Nor has Plaintiff cited to

2   evidence of record establishing "marked" limitations in any pertinent area, as

3   contemplated by Listing 14.09D.  Plaintiff has not met her burden to show harmful

4   error. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on

5   the party claiming error to demonstrate not only the error, but also that it affected

6   his 'substantial rights,' which is to say, not merely his procedural rights." (quoting

7   *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009))).

8        *2. Paragraph B for Listings 12.04, 12.06, 12.11, 12.15*

9        Plaintiff argues the ALJ erred in finding none of her mental impairments met

10  or medically equaled the "paragraph B" criteria of Listings 12.04, 12.06, 12.11,

11  and 12.15.  ECF No. 18 at 15.  Plaintiff contends the objective testing by Dr.

12  Christensen dated July 1, 2015 establishes marked limitations in the domains of

13  understanding, remembering or applying information, and the ability to

14  concentrate, persist or maintain pace. *Id.*  In analyzing these areas of mental

15  functioning, the ALJ concluded Plaintiff has mild and moderate limitations.  Tr.

16  20-21.  The ALJ specifically noted that the results of Dr. Christensen's 2015

17

18  this issue dates prior to December 6, 2018.  ECF No. 18 at 14 (citing Tr. 546-47

19  (dated 5/17/2018); Tr. 594-95 (dated 12/13/2017); Tr. 647 (dated 12/9/2016).

20

objective testing did not support finding more significant limitations because "it was based on a one time evaluation" (in 2015) and "the results were inconsistent with the longitudinal record of largely unremarkable mental status examinations [sic] findings during the Title XVI period beginning in December 2018." Tr. 26. This finding is not "conclusory," as Plaintiff contends, and is supported by substantial evidence. The ALJ did not err in finding Plaintiff's mental impairments did not meet or equal a Listing at step three.

### D. Subjective Complaints

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's symptom complaints. ECF No. 18 at 15. Where, as here, the ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, inter alia, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff contends that the ALJ "held the claimant to an impossibly high legal standard" in finding her conditions did not "prohibit [Plaintiff] from performing all work." ECF No. 18 at 16. However, examination of the decision reveals no such standard was applied, but rather, these statements were made in the context of the ALJ's findings that Plaintiff's claims were not entirely consistent with the other evidence. It was Plaintiff who claimed an inability to work. Tr. 256. The phrase used by the ALJ refers to *Plaintiff's* assertion of a claimed inability to perform any work at any exertional level on a regular and continuing basis. The ALJ also stated that the evidence is "consistent with an ability to perform all exertional levels work with the limitations noted above" and: "her allegations are not consistent with the record as a whole to the extent that her capacity is so limited that she is unable to engage in substantial gainful activity

ORDER - 27

consistent with the residual functional capacity outlined herein." Tr. 24. The ALJ did not hold Plaintiff to an improper standard.

### 1. Objective Medical Evidence

First, the ALJ found that the objective evidence is not consistent with the extent of symptoms and limitations alleged. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As to the mental health conditions, the ALJ's recitation of the evidence accurately notes that Plaintiff's mental status examinations were often within normal limits, with Plaintiff presenting as alert, oriented, cooperative, pleasant, good grooming and hygiene, good eye contact, normal mood and affect, normal speech, normal though processes and content, insight, concentration and memory. Tr. 23. The ALJ noted that despite claims of significant memory, focus and comprehension problems, the record demonstrated intact cognition even in times of increased symptomology. Tr. 23, 24. Finally, the ALJ noted the record contained evidence of depressed mood and affect, hyperactive activity, pressured speech, elevated mood, inattentive attention, and tangential thought processes, but the ALJ accommodated these symptoms in the RFC. Tr. 23.

ORDER - 28

1    As to Plaintiff's physical conditions and complaints of disabling pain, the

2 ALJ found that lumbar imaging showed mild to moderate degenerative disease

3 with no nerve root involvement.  Tr. 23 (citations to the record omitted).

4 Additionally, the ALJ found that Plaintiff consistently presented as in no acute

5 distress, with intact respiratory function, full range of motion of the extremities, no

6 motor or sensory deficits, normal strength, intact cranial nerves, and negative

7 straight leg raises.  *Id*.  The ALJ noted few mentions of lumbar tenderness and

8 decreased range of motion without motor deficit.  *Id*.  As to fibromyalgia, one

9 exam showed mild tender points, but another showed points that were not tender

10 "when distracted."  *Id*.  Plaintiff alleged disabling problems with her bilateral

11 hands, but the objective evidence showed mild to moderate tenderness on exam.

12 The ALJ reasonably concluded the objective medical evidence was inconsistent

13 with Plaintiff's allegations of disabling mental and physical health conditions.

14 This finding is supported by substantial evidence.  While a different interpretation

15 could be made based on some of the objective medical evidence, the ALJ

16 articulated several other supported grounds for discounting Plaintiff's reported

17 symptoms.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1163 (9th Cir. 2008);

18 *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (upholding the ALJ where

19 "the ALJ here considered other factors and found additional reasons for

20 discrediting Plaintiff's subjective symptom testimony.").

ORDER - 29

*2. Course of Treatment*

The ALJ found Plaintiff's alleged symptoms inconsistent with her course of mental health treatment. Tr. 23. The claimant's course of treatment is a relevant factor in determining the severity of alleged symptoms. 20 C.F.R. §§ 416.929(c)(3), 416.929(c)(3). The unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount a claimant's alleged symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Relatedly, improvement with treatment is another relevant factor. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ found that Plaintiff sought routine and periodic medication management for psychological issues. However, she did not receive significant or ongoing counseling or other mental health treatment, other than medication management. Tr. 23. In 2015, Dr. Christensen recommended psychotherapeutic care with a mental health professional, as well as medication management to improve anxiety. Tr. 454. The record reflects Plaintiff was seen twice by a

ORDER - 30

counselor since 2015.  Tr. 1009.  The ALJ noted that medication non-compliance has been documented by Plaintiff's providers.  *See* Tr. 483, 1119.  Plaintiff admitted she regularly forgets to take her Adderall and that she rarely takes medications as prescribed because she does not want to get out of bed.  Tr. 1116, 1119.  This finding is supported by substantial evidence and provides a clear and convincing reason to discredit Plaintiff's symptom claims.

   *3.   Inconsistent Statements about Drug Use*

   The ALJ found that Plaintiff has a history of misrepresenting facts to providers, including her drug use.  Tr. 24.  In evaluating symptom claims, the ALJ may utilize ordinary techniques of evaluation of the evidence, including prior inconsistent statements.  *See Smolen*, 80 F.3d at 1284.  Moreover, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding.  *Thomas*, 278 F.3d at 959. Plaintiff does not contest this ground, but claims her positive methamphetamine result might have been due to "Wellbutrin, Bupropion, and/or Adderall" medications.  ECF No. 18 at 19.  However, there is no evidence of Plaintiff having been prescribed Wellbutrin or Bupropion, and Plaintiff's provider explained that Adderall would not present as methamphetamine on the drug screen.  Tr. 1116. This finding is supported by substantial evidence and provides a clear and convincing reason to discredit Plaintiff's symptom claims.

ORDER - 31

### 4. Daily Activities

The ALJ found Plaintiff's alleged symptoms of severe anxiety, panic attacks and difficulty being in crowds inconsistent with mental status findings, as well as her reports that she spends time with friends, takes children to school , and cares for her elderly father.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Plaintiff's ability to perform some daily activities is not, by itself, a clear and convincing reason to reject Plaintiff's subjective symptom claims.  However, because the ALJ properly discredited Plaintiff's subjective symptom complaints on other grounds, this error is harmless.  *See Carmickle*, 533 F.3d at 1162 (holding that the inclusion of an invalid reason to discount a claimant's credibility is harmless so long as the other reasons provided are supported by substantial evidence and the error does not invalidate the ALJ's ultimate conclusion on credibility).

### 5. Limited Work History

The ALJ cited evidence showing Plaintiff's very limited work history.  Tr. 24.  It is well-established that evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's

ORDER - 32

testimony that she is unable to work.  *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015) (seeing no error in the ALJ relying on "limited work history" to "discount[ ] the credibility of [the claimant's] testimony about the severity and intensity of her symptoms*"); Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (listing "work record" as one factor an ALJ may weigh in "reaching a credibility determination"); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529 (work record can be considered in assessing credibility); 20 C.F.R. § 416.929 (same).  *Thomas* specifically approved of an ALJ rejecting a claimant's credibility when the claimant's "extremely poor work history" reflecting "little propensity to work in her lifetime"—i.e., where a claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability." *Thomas*, 278 F.3d at 959.  Plaintiff has limited work history as a caregiver and childcare worker. *See* Tr. 392.  The ALJ also cited a January 20, 2020 progress note indicating that when Plaintiff's provider asked about her work history, she reported she had "never worked" and when asked why, she didn't know, but she didn't think she could, and she had "never tried." Tr. 24, 1116.  This finding is supported by

ORDER - 33

substantial evidence and provides a clear and convincing reason to discredit

Plaintiff's symptom claims.

In sum, the ALJ did not err by discounting Plaintiff's symptom complaints.

**E. Step Five**

Plaintiff argues the ALJ erred at step five by relying on an incomplete

hypothetical to the vocational expert.  ECF No. 18 at 20.  This argument is

foreclosed because, as discussed above, the ALJ properly evaluated the medical

evidence and reasonably discounted Plaintiff's testimony.  This restatement of

Plaintiff's argument fails to establish error at step five.  *Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as

Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is

**GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 34

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 27, 2023.

*s/Lonny R. Suko*
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 35